Bacharach, J.,
concurring in the majority’s order and judgment.
I join the majority’s thorough, well-reasoned order and judgment. As the majority explains, Okla. Stat. tit. 66, § 128 imposes a duty on a railway company to maintain the roadway within the railway company’s right-of-way. Here BNSF’s right-of-way included the sloped portion of the roadway that allegedly contributed to the accident; thus, BNSF had a duty to maintain that portion of the roadway.
BNSF argues that by enacting Okla. Stat. tit. 69, § 601(A), the Oklahoma legislature abrogated the duty created by § 128. The majority rejects BNSF’s argument based on an Oklahoma canon of statutory construction. I agree with the majority’s reasoning. But in rejecting BSNF’s argument, I would also rely on a second canon: A statute is repealed by implication only if the legislature clearly intends to repeal or supersede the statute. That intent was far from clear when the Oklahoma legislature adopted Okla. Stat. tit. 69, § 601(A).
This section states that county commissioner boards in the various counties “shall have exclusive jurisdiction over the designation, construction and maintenance and repair of all of the county highways and bridges therein.” Okla. Stat. tit. 69, § 601(A). The question is whether this statute abrogated a railway company’s duty under § 128 to maintain the part of the roadway lying within the railway company’s right-of-way. In my view, § 128 and § 601 can reasonably be read as consistent with one another.
Section 601(A) states that county commissioner boards have “jurisdiction” over roads. Okla. Stat. tit. 69, § 601(A). The term “jurisdiction” might refer simply to the boards’ authority to decide whether someone can or must make changes affecting a roadway. See Markillie v. Bd. of Cty. Rd. Comm’rs, 210 Mich.App. 16, 532 N.W.2d 878, 881-82 (1995) (interpreting “jurisdiction” over a highway to mean “control” with authority to construct, maintain, and repair the highway); Bryan A. Garner, Gamer’s Dictionary of Legal Usage 693 (3d ed. 2011) (“Jurisdiction suggests both the legal power and the legal authority to determine, command, rule, or govern to a specified, limited extent....”); I Bouvier Law Dictionary 1449 (Stephen Michael Sheppard ed. 2012) (defining “jurisdiction” as the power to legislate, regulate, or assert authority).
This understanding of the term “jurisdiction” is implicit in two publications by *660 the U.S. Department of Transportation that address jurisdiction over railway-crossings. First, the Traffic Control Devices Handbook frames “jurisdiction” over railway crossings as the authority to decide whether to (1) approve improvements for railway crossings, (2) open new railway crossings, or (3) close existing railway crossings:
Jurisdiction over railroad-highway grade crossings resides almost exclusively in the States.... [Sjeveral agencies, both public and private can be involved when improvements are considered at a railroad highway grade crossing....
When a new railroad-highway grade crossing is contemplated or when an existing grade crossing is proposed for closing, these agencies should be involved as early as possible in the planning and decisionmaking process.
U.S. Dep’t of Transp., Fed. Highway Admin., Traffic Control Devices Handbook 8-7 to 8-8 (1983). Second, the Manual on Uniform Traffic Control Devices uses the term “jurisdiction” to mean the ability to regulate a railway crossing: “The highway agency or authority with jurisdiction and the regulatory agency with statutory authority, if applicable, jointly determine the need and selection of devices at a grade crossing.” U.S. Dep’t of Transp., Manual on Uniform Traffic Control Devices 747 (2009). “Jurisdiction” as used in § 601(A) could bear a similar meaning, referring to the boards’ authority to approve or disapprove proposed changes to railway crossings.
If this is the meaning of the statutory term “jurisdiction,” § 128 would not conflict with § 601(A); rather, each statute would address a separate issue. Section 128 would establish a railway company’s duties to (1) propose changes necessary to maintain the safety of a right-of-way and (2) implement the changes that are approved. By contrast, § 601(A) would empower the boards to approve or disapprove proposed changes. Because § 601(A) can reasonably be read in this manner, the Oklahoma legislature did not clearly intend to abrogate the duty created by § 128. Consequently, this Oklahoma canon would lead us to conclude that the duty under § 128 remains intact.
[[Image here]]
Like the majority, I believe that § 601(A) did not abrogate BNSF’s duty to maintain the roadway within BNSF’s right-of-way. As the majority explains, this conclusion is supported by the canon providing that a more specific statute takes precedence over a more general statute.
This conclusion is also supported by a second canon: A statute is repealed by implication only if the legislature clearly intends to repeal or supersede the statute. This canon applies because it is not clear whether the Oklahoma legislature intended for § 601(A) to abrogate the duty created by § 128.
Based on both canons of construction, § 128 remained intact after the adoption of § 601(A). Under § 128, BNSF bore a duty to maintain the sloped portion of the roadway that allegedly contributed to the accident.